**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING,

Plaintiff

v.

KELLY PARSONS, et al.,

Defendants

Case No.: 2:23-cv-01544-APG-DJA

**Order (1) Granting in Part Estate Defendants' Motion for Summary Judgment, (2) Granting the Estate Defendants' Motion for Judicial Notice, and (3) Ordering Supplemental Briefs**

[ECF Nos. 92, 95]

Plaintiff NewRez LLC, d/b/a Shellpoint Mortgage Servicing, is the assignee of a deed of trust (DOT) that includes an error. When describing the property it encumbers, the DOT lists the address of one property but the legal description of another. Shellpoint alleges that the loan that the DOT secured was not paid off. Defendant Kelly Parsons was the original trustor of the DOT. The Estate Defendants[1] may claim a current interest in the property that Shellpoint alleges the DOT encumbers.

Shellpoint sues Parsons and the Estate Defendants to validate its rights under the DOT. It seeks to quiet title to establish that the DOT has not been satisfied and continues to encumber the property. It seeks to reform the DOT to fix the error so that it accurately describes which parcel it encumbers. It also brings a claim against the Estate Defendants for unjust enrichment because Shellpoint is obliged to pay property taxes on the property and the Estate Defendants have failed to pay those taxes. If the DOT is unenforceable, Shellpoint requests in the alternative that I

[1] The Estate Defendants are Kevin Stewart; Andrew Stewart; Melissa Pehrson; Daniel Stewart, individually, as representative of the Estate of Dale J. Stewart, and as Trustee of the Dale Stewart Irrevocable Memorial Trust; and Kamerin Tangaro, as representative of the Estate of Dale J. Stewart. The complaint misspells Tangaro's name as "Tangero." ECF No. 92 at 2.

impose an equitable lien on the property for the amount necessary to discharge the debt evidenced by the DOT, the outstanding principal balance, or the amount Shellpoint has paid in real estate taxes.

The Estate Defendants move for summary judgment on all of Shellpoint's claims. They argue that each claim is untimely under the applicable statute of limitations and is barred by the doctrine of laches. I grant the Estate Defendants' motion in part. Shellpoint's quiet title claim is barred by laches and its reformation claim is time-barred. Additionally, Shellpoint is prevented by laches from recovering the alleged outstanding debt, principal balance, interest, and fees on the DOT under its equitable lien claim. I order supplemental briefs on when the statute of limitations began to run on Shellpoint's unjust enrichment and equitable lien claims, whether each payment of property taxes constitutes a new injury with its own limitation period, and when Shellpoint paid the taxes.

## I. THE ESTATE DEFENDANTS' MOTION FOR JUDICIAL NOTICE

The Estate Defendants move for me to take judicial notice of several documents filed in the official records of Elko County, Nevada, documents filed in another suit initiated by Shellpoint, and documents in the probate of Dale Stewart's estate.[2] Shellpoint does not oppose the motion for judicial notice. I may take judicial notice of facts that are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Ev. 201(b)(1), (2). I take judicial notice of the public records filed in Elko

[2] The Estate Defendants stylized their brief as a "request for judicial notice." ECF No. 95 at 1. "All communications with the court must be styled as a motion, stipulation, or notice." LR IA 7-1(b). I will consider the Estate Defendants' "request" as a motion for the purposes of this order, but they must comply with the Local Rules in the future.

County (Exhibits 1-14, 16-19, 22). Shellpoint has not disputed any of their facts, and its opposition cites to copies of many of these records.

I take judicial notice of the existence of the documents filed in Shellpoint's other action and in the probate action because they are public records, but not the truth of the facts therein because they contain disputed facts (Exhibits 15, 20-21, 23-24). *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). This ruling, however, does not change the outcome of this order because I do not cite to any of Exhibits 15, 20-21, or 23-24.

## II. BACKROUND

Kelly Parsons bought a property in West Wendover, Nevada in 2001 that was assigned Assessor's Parcel Number (APN) 010-740-021. ECF Nos. 95-1 at 2; 95-2; 95-3. That property was split into two parcels, titled Parcel 1 and Parcel 2. ECF Nos. 95-2; 95-3. The parties do not dispute that Parcel 1 is located at 964 Parkway Dr. and has an APN of 010-740-107. *See* ECF Nos. 92 at 3; 95-6 at 2-3 (Parsons granting Parcel 1 with an APN 010-740-107 to non-parties). Parcel 2 is located at 988 Parkway Dr. and has an APN of 010-740-108 (the "988 Parkway Property"). ECF Nos. 95-7 at 3-4, 15; 95-18 at 3, 21. The 988 Parkway Property is at issue in this case.

Parsons received two loans secured by two DOTs encumbering the two parcels, but both DOTs had similar issues. The first DOT was for a loan of $128,000, but it is unclear what property it encumbers. It includes the APN of the joint property (APN 010-740-021), the address of Parcel 2 at 988 Parkway Dr., and the legal description of Parcel 1. ECF No. 95-4 at 2-4, 17, 21. The second DOT was for a $100,000 loan and includes the APN of the joint property, the address of Parcel 1, and the legal description of Parcel 2. ECF No. 95-5 at 2-4, 17, 21.

Shellpoint is the assignee of the $128,000 DOT and alleges it encumbers the 988 Parkway Property, Parcel 2. ECF No. 108-6 at 2.

In 2003, Parsons sold the 988 Parkway Property to Dale and Sheila Stewart, the parents of Estate Defendants Kevin Stewart, Andrew Stewart, Daniel Stewart, and Melissa Pehrson. ECF Nos. 94-2 at 2, 11[3]; 95-9 at 2; 108-26 at 34. Sheila died in 2011. ECF No. 94-12 at 3. Afterward, Dale obtained a new loan on the 988 Parkway Property for about $114,000. ECF No. 95-18 at 3, 18-19. Dale died in 2016. ECF No. 94-12 at 3. Daniel Stewart and Estate Defendant Kamerin Tangaro were appointed as co-administrators of Dale's estate in probate. ECF No. 94-12. The Estate paid off the remainder of the $114,000 loan against the 988 Parkway Property in 2017, believing it was the only DOT encumbering the property. ECF Nos. 94-12 at 3-4; 95-22.

While the Stewarts possessed the 988 Parkway Property, the $128,000 loan and DOT were experiencing their own set of issues. In 2003, shortly after the sale of the 988 Parkway Property to the Stewarts, the mortgage company notified Parsons that the $128,000 loan had not been paid off. ECF No. 108-9 at 5. Parsons believed that after selling the 988 Parkway Property, the $128,000 loan would have been paid off, but he kept making payments on the loan to not hurt his credit. *Id.* In 2010, Parsons stopped making payments, and a notice of default was recorded identifying a DOT executed by Parsons for the $128,000 loan. ECF Nos. 95-10; 108-12 at 17-20. The notice of default included the APN and address for the 988 Parkway Property. ECF No. 95-10 at 2. The notice of default was rescinded the following month. ECF No. 95-13.

[3] The contract between Parsons and the Stewarts lists the APN as 010-740-109, which is different from the APN for the 988 Parkway Property. ECF No. 94-2 at 2. But the parties do not address this, they agree that the APN for the 988 Parkway Property is 010-740-108, and the grant to the Stewarts lists 010-740-108 as the APN. ECF Nos. 92 at 3; 95-9 at 2; 108 at 5. So I assume this discrepancy is not relevant for this order.

The $128,000 DOT was then assigned to Bank of America. ECF No. 108-3. This assignment included the APN of the 988 Parkway Property. *Id.* at 2. In 2012, Bank of America submitted a claim to the title insurance company that insured the $128,000 DOT. ECF No. 93-5. Bank of America noted that the $128,000 DOT encumbered the 988 Parkway Property but includes the wrong APN and legal description of the property. *Id.* at 2. However, a few months later, a Bank of America contractor assigned to handle the $128,000 DOT title issue emailed the title insurance company and stated that the loan associated with the title claim had been paid off. ECF No. 93-6 at 2. The title insurance company then closed the claim. ECF No. 93-7 at 2.

Bank of America subsequently assigned the $128,000 DOT to Green Tree Servicing. ECF No. 108-4. In 2013, Green Tree submitted its own claim to the title insurance company regarding the same issue: that the DOT included the wrong legal description of the property it encumbered, the 988 Parkway Property. ECF No. 93-8 at 2. Recognizing it was dealing with the same issue as with Bank of America, the title insurance company investigated whether the loan had been paid off. ECF No. 93-11 at 2-3. The title insurance company examined under oath a Green Tree representative who testified that it was possible that the loan was paid off and that it was not properly recorded in Green Tree's file because Bank of America did not give Green Tree all the information it had on the loan. ECF Nos. 93-11 at 3; 94-10 at 3, 8-9. The Green Tree representative said she would investigate further. ECF No. 94-10 at 11. But when the title insurance company still had not received an update from her over a year later, it denied Green Tree's claim. ECF No. 93-11 at 3.

The $128,000 DOT was again assigned, multiple times, until it was assigned to Shellpoint. ECF Nos. 108-5; 108-6. Shellpoint's records indicate the $128,000 has not been paid off. ECF No. 108-11 at 3.

In 2023, a service company retained by Shellpoint posted a notice of inspection on the 988 Parkway Property. ECF Nos. 94-13 at 2; 94-14 at 3. Daniel Stewart then contacted Shellpoint explaining that his attorney and title company found no active lien or loan against the house and that he wanted to resolve the issue. ECF No. 94-14 at 3. Daniel attempted to contact Shellpoint several times during the summer of 2023 but had no success getting a response. *Id.* at 4-6.

Shellpoint filed this lawsuit in September 2023. ECF No. 1. When a Shellpoint representative contacted Daniel in October 2023, she stated she could not discuss the issue with Daniel because his name was not in Shellpoint's system in relation to the 988 Parkway Property. ECF No. 94-16 at 2.

## III. ESTATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and

reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

**A. Shellpoint's reformation claim is time-barred, and I order the parties to file supplemental briefs on how the statute of limitations affects Shellpoint's unjust enrichment and equitable lien claims.**

The Estate Defendants argue that each of Shellpoint's claims is barred by Nevada's three-year limitation period for actions on the ground of mistake because each is premised on the initial mistake of the property description in the $128,000 DOT. Shellpoint argues that the applicable statute of limitation must be determined and applied to each claim separately.

Under Nevada law, "an action for relief on the ground of fraud or mistake" has a three-year limitation period, subject to some exceptions not relevant here. Nev. Rev. Stat. (NRS) § 11.190(3)(d). The limitation period begins to run "upon the discovery by the aggrieved party of the facts constituting the fraud or mistake." *Id.* This limitation period typically applies to causes of action for fraud, negligent misrepresentation, and breach of fiduciary duty. *See, e.g., Nakamura v. Sunday Grp. Inc.*, No. 2:22-cv-01324-MMD-EJY, 2023 WL 4549363, at *5 (D. Nev. Apr. 10, 2023). "Only where uncontroverted evidence proves that the plaintiff discovered or should have discovered the facts giving rise to the claim should such a determination be made as a matter of law." *Siragusa v. Brown*, 971 P.2d 801, 812 (Nev. 1998).

*1. Nevada's four-year catchall limitation period applies to Shellpoint's quiet title claim.*

Shellpoint argues that the limitation period for its quiet title claim is four-years, citing to *U.S. Bank, N.A. as Tr. for Specialty Underwriting & Residential Fin. Tr. Mortg. Loan Asset-Backed Certificates Series 2006-BC4 v. Thunder Props., Inc.*, 503 P.3d 299 (Nev. 2022) (en banc) ("*Thunder Properties*"). In *Thunder Properties*, a bank sued to quiet title on a deed of

trust, seeking a declaratory judgment that its lien was not extinguished and remained a present interest on the encumbered property. *Id.* at 303. The Supreme Court of Nevada held that Nevada's four-year catchall limitation period applied to the quiet title claim, and that it began to run when the "lienholder receives notice of some affirmative action by the titleholder to repudiate the lien or that is otherwise inconsistent with the lien's continued existence." *Id.* at 306.

*Thunder Properties* applies to Shellpoint's quiet title claim. Shellpoint alleges that the $128,000 DOT remains a valid, enforceable lien on the 988 Parkway Property and seeks a declaratory judgment affirming such, just as the bank in *Thunder Properties* did. ECF No. 7 at 5-6, 9-10.

The Estate Defendants' argument (that the three-year limitation period for mistake applies because the quiet title claim arises from the initial mistake on the $128,000 DOT) is inconsistent with *Thunder Properties*. In that case, the Supreme Court of Nevada stated that "the applicable statute of limitations should *not* depend on highly case-specific facts or arguments." 503 P.3d at 305 (emphasis in original). Instead, courts should "[f]ocus[] on the nature of the claim, rather than specific case-by-case facts" when determining the applicable statute of limitations. *Id.* To hold that the $128,000 DOT's initial mistake overrides *Thunder Properties* and changes the limitation period would be engaging in the case-specific factual analysis that is improper under *Thunder Properties*.

The nature of Shellpoint's quiet title claim is to determine and enforce the validity of its lien. Therefore, its limitation period began when a titleholder of 988 Parkway Property affirmatively repudiated the $128,000 DOT's lien. The Estate Defendants do not otherwise argue when that occurred, so they have not shown they are entitled to judgment as a matter of law that Shellpoint's quiet title claim is time-barred.

*2. Shellpoint's reformation claim is time-barred.*

Shellpoint's next cause of action is reformation to change the legal description of the property in the $128,000 DOT from Parcel 1 to the 988 Parkway Property. The parties did not cite to, and I could not find, a case from the Supreme Court of Nevada determining the limitation period for reformation claims. In absence of controlling state law, I must use my best judgment to predict how the state's highest court would decide the issue. *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980). I may look to intermediate appellate court decisions, statutes, and well-reasoned decisions from other jurisdictions for guidance. *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).

The Supreme Court of Nevada has consistently held that reformation is premised on a mistake. *First Fed. Sav. & Loan Ass'n of Nevada v. Racquet Club Condominiums*, 801 P.2d 1360, 1362 (Nev. 1990) ("Reformation is available to a party seeking to alter a written instrument which, because of a mutual mistake of fact, fails to conform to the parties' previous understanding or agreement."), *vacated in part on reh'g,* 805 P.2d 601 (Nev. 1991); *Anderson v. Weise*, 598 P.2d 1144, 1146 (Nev. 1979) ("A deed will be reformed between the parties to reflect their true intention when that intention has been frustrated by mutual mistake."); *Ruhling v. Hackett*, 1 Nev. 360, 363, 1865 WL 1059, at **3 (Nev. 1865) (stating that "the rule that courts of equity have the power to correct mistakes in deeds and other instruments, so as to make them conform to the intention of the parties, is so universally recognized"). California applies its three-year limitation period for mistakes to reformation claims, and the limitation period begins to run when the party bringing the reformation claim could have discovered the mistake. *John Hancock Mut. Life Ins. Co. v. Cohen*, 254 F.2d 417, 423-24 (9th Cir. 1958) (citing *Consolidated Reservoir & Power Co. v. Scarborough,* 16 P.2d 268, 270 (Cal. 1932)). Courts often look to

California law when interpreting novel questions of Nevada law. *See, e.g., Ramos v. Sables, LLC*, No. 2:25-cv-00776-APG-BNW, 2026 WL 1209902, at *6 (D. Nev. May 2, 2026). I therefore predict that the Supreme Court of Nevada would apply its three-year limitation period for mistakes to claims for reformation, and the limitation period begins to run when the party bringing the claim discovers the mistake.

Here, Shellpoint's predecessor-in-interest, Bank of America, discovered the mistake of the conflicting property descriptions in the $128,000 DOT in 2012. Therefore, it had until 2015 to file a reformation claim. Under Nevada law, "an assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before assignment." *First Fin. Bank v. Lane*, 339 P.3d 1289, 1293 (2014) (en banc) (quotation omitted); *see also CitiMortgage, Inc. v. Saticoy Bay LLC Series 3084 Bellavista Lane*, No. 71606, 448 P.3d 573, 2019 WL 4390765, at *1 n.2 (Nev. 2019) ("An assignee stands in the shoes of the assignor and ordinarily obtains only the rights possessed by the assignor at the time of the assignment, and no more." (quotation omitted)). Because the reformation claim of Shellpoint's assignors became time-barred in 2015, Shellpoint's reformation claim was also barred by the statute of limitation when it filed this suit in 2023. Therefore, I grant the Estate Defendants summary judgment on this claim.

*3. I order the parties to file supplemental briefs on the limitation period for Shellpoint's unjust enrichment claim.*

Shellpoint argues that its unjust enrichment claim has a four-year limitation period. Shellpoint is correct as a matter of law. *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011) (en banc) (citing NRS § 11.190(2)(c)). The limitation period begins under NRS § 11.190(2)(c) when the plaintiff "knew or should have known of facts constituting" the cause of

action. *Soper By & Through Soper v. Means*, 903 P.2d 222, 225 (Nev. 1995); *see MMSP, LLC v. Stovall*, No. 2:22-cv-01218-GMN-MDC, 2026 WL 867852, at *6 (D. Nev. Mar. 27, 2026) (applying the discovery rule to an unjust enrichment claim's limitation period).

The Estate Defendants argue that if a four-year limitation period applies, then Shellpoint's unjust enrichment claim still is time-barred because its predecessors learned of the mistake in the $128,000 DOT in 2012. But it is not clear that Shellpoint's predecessors learning that the DOT has a mistake means they also discovered they had a cause of action for unjust enrichment because of the property taxes Shellpoint would pay. If the banks were contractually obliged to pay the property taxes, they may not know that they were unjustly enriching the Estate Defendants until the $128,000 DOT was repudiated.

Additionally, neither side addresses what recovery the statute of limitation would bar if it applies. It may bar Shellpoint from recovering any damages if its predecessors discovered the cause of action more than four years before Shellpoint filed suit. Or each property tax payment may be a new injury which causes a new claim to arise with its own limitation period. *See, e.g., Clayton v. Gardner*, 813 P.2d 997, 999 (Nev. 1991) (stating that "where contract obligations are payable by installments, the limitations statute begins to run only with respect to each installment when due"). If so, then the statute of limitation would not bar Shellpoint from recovering property taxes it paid within four years of filing suit.

Because the parties do not sufficiently argue these points to allow me to reach a decision, I order them to file supplemental briefs on these issues. Specifically the supplemental briefs should address: (1) when Shellpoint's unjust enrichment claim to recover property taxes accrued for the limitation period under NRS § 11.190(2)(c), (2) whether a new limitation period for

unjust enrichment began to run every time Shellpoint paid property taxes for the 988 Parkway Property; and (3) when Shellpoint made each payment.

*4. I order the parties to file supplemental briefs on the limitation period for Shellpoint's equitable lien claim.*

Next, Shellpoint cites to NRS § 11.190(2)(c) for the limitation period for its equitable lien claim. NRS § 11.190(2)(c) sets a four-year limitation period for an "action upon a contract, obligation or liability not founded upon an instrument in writing." The parties do not cite, and I could not find, a case where the Supreme Court of Nevada states the limitation period for equitable lien claims, so I must predict what it would decide.

"The theory of equitable liens has its ultimate foundation . . . in contracts, express or implied, which either deal with or in some manner relate to specific property." *Union Indem. Co. v. A.D. Drumm, Jr., Inc.*, 70 P.2d 767, 768 (Nev. 1937). Therefore, I predict the Supreme Court of Nevada would apply its four-year limitation period for contractual claims not founded on a written instrument to equitable lien claims. NRS § 11.190(2)(c).[4] Again, the limitation period for contractual claims begins to run when the plaintiff "knew or should have known of facts constituting" the cause of action. *Soper By & Through Soper*, 903 P.2d at 225.

Shellpoint seeks an equitable lien partly to recover what it has paid in real estate taxes related to the 988 Parkway Property. For the same reasons why the parties' briefs are inadequate to determine how the limitation period affects the unjust enrichment claim, they also are insufficient to determine how the limitation period affects the equitable lien claim. So I also order supplemental briefs on (1) when the limitation period began for Shellpoint's equitable lien

[4] Nevada has a six-year limitation period for contractual claims founded upon an instrument in writing. NRS § 11.190(1)(b). I do not address the applicability of § 11.190(1)(b) because the parties do not raise it.

claim, (2) whether a new limitation period for an equitable lien began to run every time Shellpoint paid property taxes for the 988 Parkway Property, and (3) when Shellpoint made the payments.[5]

**B. The doctrine of laches bars Shellpoint's quiet title claim and its ability to receive an equitable lien on the 988 Parkway Property for the allegedly outstanding loan.**

"Laches is an equitable doctrine which may be invoked when delay by one party works to the disadvantage of the other, causing a change of circumstances that would make the grant of relief to the delaying party inequitable." *Building & Constr. Trades Council of N. Nev. v. State ex rel. Pub. Works Bd.*, 836 P.2d 633, 636-37 (Nev. 1992). "The condition of the party asserting laches must become so changed that the party cannot be restored to its former state." *Home Savings Ass'n v. Bigelow,* 779 P.2d 85, 86 (Nev. 1989). In short, the Estate Defendants "must show that the delay caused actual prejudice." *Besnilian v. Wilkinson*, 25 P.3d 187, 189 (Nev. 2001) (en banc). "Especially strong circumstances must exist to sustain a defense of laches when the statute of limitations has not run." *Lanigir v. Arden*, 82 409 P.2d 891, 896 (Nev. 1966). Circumstances that constitute laches includes "loss of evidence," harm to the "rights of innocent purchasers," a "change in relation to the parties or property, or great expenditures in the improvements thereof." *Miller v. Walser*, 181 P. 437, 445 (Nev. 1919).

The Estate Defendants argue that the doctrine of laches prevents Shellpoint from pursuing all of its claims against them. They state they would not have paid off the $114,000 loan Dale took out against the 988 Parkway Property if they knew there was a more senior loan encumbering it. They also contend that key evidence has been lost because both Dale and Sheila

[5] As I explain below, Shellpoint is barred by laches from recovering anything other than the paid property taxes under its equitable lien claim.

have died and because none of the parties can locate the Bank of America contractor who stated the $128,000 loan was paid off. They say they are prejudiced by Shellpoint's demand for damages, which includes eleven years of late fees and interest that have accrued since Shellpoint's predecessors first learned of the $128,000 DOT's mistake in 2012 but did not file an action to validate their rights. Finally, the Estate Defendants argue they lost opportunities to sell the 988 Parkway Property when property values in Nevada were at an all time high. Shellpoint opposes applying laches, contending that the Estate Defendants have not shown sufficient prejudice and that the Estate Defendants could have filed suit to litigate these issues earlier because they were on constructive notice of Shellpoint's lien. I analyze whether laches bars each remaining claim separately.

*1. The doctrine of laches prevents Shellpoint from bringing its quiet title claim.*

Under its quiet title claim, Shellpoint seeks a declaratory judgment that the $128,000 DOT is still valid against the 988 Parkway Property. The payoff figure for the loan, as of August 2025, was $278,267.32 (principal of $115,135.35, $133,019.11 in interest, and the remainder consisting of various fees). ECF No. 93-18 at 2. Allowing Shellpoint to enforce a lien for that amount against the Estate Defendants, whose immediate predecessors did not receive the loan, would be inequitable. Shellpoint's predecessors knew of the alleged DOT errors and disputes over whether the loan was paid off over a decade ago but sat on their rights to the prejudice of the Estate Defendants.

First, the Estate Defendants incurred a significant financial detriment by paying off a second-priority lien believing there was no other lien against the 988 Parkway Property. They paid off the $114,000 loan that Dale took out in 2011. Because $128,000 DOT was recorded first, it would have been senior to the $114,000 loan if valid. *See State Dep't of Tax'n v.*

*Kawahara*, 351 P.3d 746, 748 (Nev. 2015) (en banc) ("At common law, lien priority depends upon the time that liens attach or become perfected: first in time, first in right." (quotation omitted)). The Estate Defendants testified that they would not have paid off this second-priority loan if they knew the senior $128,000 DOT also potentially encumbered the property. But now that they have paid the $114,000 loan, the Estate Defendants cannot be returned to their former state. Spending thousands of dollars that the defendants would not have paid without Shellpoint's predecessors' delay is actual prejudice for laches. *Carson City v. Price*, 934 P.2d 1042, 1044 (Nev. 1997).

Shellpoint argues that the Estate Defendants' payment of the $114,000 is not prejudice due to Shellpoint's predecessors' delay because the Estate Defendants had constructive notice of the $128,000 DOT. The $128,000 DOT appears in the grantor/grantee index for Elko County under Kelly Parsons' name. ECF No. 108-27. Shellpoint argues that the Estate Defendants could have looked up Parsons' name in the grantor/grantee index before paying off the $114,000 loan because he was a former owner of the property. Shellpoint asserts that because they did not, any prejudice they experienced was because of their own oversight. But even though the Estate Defendants could have searched for Parsons in the grantor/grantee, Shellpoint does not offer a convincing reason why they should have. About 14 years passed between Parsons selling the 988 Parkway Property to Dale and Sheila and the Estate Defendants paying off the $114,000 loan.[6] Also, in 2023, Daniel Stewart wrote to Shellpoint that the Estate Defendants' title company could not find the $128,000 DOT after Shellpoint's default servicing company posted

---

[6] Additionally, one would assume when the $114,000 loan was put in place, the title company would have conducted a title search. That would have revealed the $128,000 DOT if it was properly recorded. At that point, the bank might not have made the loan since it would have been in second priority position.

the notice of inspection on the 988 Parkway Property. ECF No. 94-14 at 3. If these sophisticated actors did not locate the $128,000 DOT when they had substantial financial incentive to do so, then it is not equitable to hold that the Estate Defendants should have known about the $128,000 DOT.

Second, evidence has been lost due to Shellpoint and its predecessors' delay. Dale Stewart died after Bank of America learned of the mistake in the $128,000 DOT. Bank of America could have brought this action while he was still alive. But now, he cannot testify about whether he repudiated the $128,000 DOT, which is relevant to determine whether the statute of limitations has run on the quiet title claim. Also, the Estate Defendants claim they could not locate the Bank of America contractor who stated that the $128,000 loan had been paid off. Shellpoint does not dispute this. Discovery has closed, and neither party produced any evidence about the work she did on the $128,000 DOT. That lost evidence prejudices the Estate Defendants because the parties now cannot determine whether the contractor was correct. If she was, then Shellpoint does not have an enforceable lien on the 988 Parkway Property. Additionally, it would be inequitable to allow Shellpoint to recover interest and late fees accrued on the loan when it and its predecessors' delay in filing this suit allowed those damages to increase.

Therefore, the Estate Defendants have experienced actual prejudice due to Shellpoint and its predecessors' delay in filing this suit eleven years after Bank of America learned of the issue in the $128,000 DOT. Shellpoint does not give a reason for this long delay. *Cooney v. Pedroli*, 235 P. 637, 640 (Nev. 1925). In fact, the Supreme Court of Nevada has held that a delay of a month can justify laches depending on the circumstances. *Building & Constr. Trades Council of*

*N. Nevada*, 836 P.2d at 637. Eleven years far exceeds that. Therefore, Shellpoint is prevented under laches from pursuing its quiet title claim against the Estate Defendants.

*2. The doctrine of laches does not bar Shellpoint's unjust enrichment claim.*

The Estate Defendants have not shown sufficient prejudice for laches to prevent Shellpoint's unjust enrichment claim based on the property taxes it has allegedly paid. The Estate Defendants do not argue they would not have paid the $114,000 loan if they knew Shellpoint would pay the relevant property taxes in the future. So they have not undertaken a significant financial action due to Shellpoint and its predecessors' delay to recover the paid property taxes. Also, the Estate Defendants do not explain what Dale, Sheila, or the unlocatable Bank of America contractor could have testified to regarding the alleged property taxes Shellpoint paid. And they have not shown how any lost evidence regarding whether the $128,000 loan was paid off would be relevant for the issues in the unjust enrichment claim. *See Besnilian*, 25 P.3d at 189. Finally, their contention that they would have sold the 988 Parkway Property if not for this suit is too speculative to constitute prejudice for laches. *Home Savings Ass'n*, 779 P.2d at 86-87.

*3. The doctrine of laches bars Shellpoint from recovering the outstanding balance of the $128,000 loan under its equitable lien claim but not the amount it paid in property taxes.*

Shellpoint essentially seeks the same damages for its equitable lien claim as it does for its quiet title and unjust enrichment claims: the amount necessary to discharge the debt remaining on the $128,000 DOT and the amount it paid in property taxes. Therefore, my rulings above on what equity allows Shellpoint to recover apply for this claim as well. Shellpoint is prevented under laches from receiving an equitable lien to recover the outstanding debt, principal balance, interest, and other fees on the $128,000 DOT. The prejudice the Estate Defendants experienced

due to Shellpoint and its predecessors' delay on filing its quiet title claim also justifies laches here. But Shellpoint is not prevented under laches from receiving an equitable lien for the property taxes it has paid because the Estate Defendants have not shown they have been prejudiced by Shellpoint's delay in recovering those damages.

## IV. CONCLUSION

I THEREFORE ORDER that defendants Kevin Stewart; Andrew Stewart; Daniel Stewart, individually, as representative of the Estate of Dale J. Stewart, and as Truste of the Dale Stewart Irrevocable Memorial Trust; Kamerin Tangaro, as representative of the Estate of Dale J. Stewart; and Melissa Pehrson's motion for summary judgment **(ECF No. 92) is GRANTED in part**, as set forth above.

I FURTHER ORDER that the Estate Defendants' motion for judicial notice **(ECF No. 95) is GRANTED**.

I FURTHER ORDER the parties to submit supplemental briefs on how the limitation periods for Shellpoint's unjust enrichment claim and equitable lien claim affect recovery on those claims, as consistent with my order above, per the following schedule: (1) simultaneous opening briefs, limited to ten pages, are due September 9, 2026 and (2) simultaneous response briefs, limited to seven pages, are due on September 16, 2026.

I FURTHER ORDER the clerk of court to change the name "Kamerin Tangero" in the case caption to "Kamerin Tangaro."

DATED this 25th day of August, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE